## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| THEOPLIS WILLIAMS | § | |
| | § | |
| V. | § | CASE NO. 4:11-CV-00373 |
| | § | (Judge Mazzant) |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for Disability Insurance Benefits. After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be AFFIRMED.

### HISTORY OF THE CASE

Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act on July 16, 2004, claiming entitlement to disability benefits due to disability since June 15, 2001. Plaintiff's application was denied initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") in Fort Worth, Texas, on August 8, 2007. Plaintiff was represented by counsel at the proceeding. At the hearing, Plaintiff, his wife, Ms. Kathlyn Williams, and the ALJ's vocational expert, Todd Harden, testified.

On September 27, 2007, the ALJ denied Plaintiff's claim, finding Plaintiff "not disabled." Plaintiff requested Appeals Council review, which the Appeals Council denied on February 12, 2009. Therefore, the September 27, 2007 decision of the ALJ became the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 (2005).

On June 22, 2010, the undersigned recommended that the Commissioner's denial of benefits be affirmed (TR  817).   Plaintiff filed objections to the Report and Recommendation.   On July 26, 2010, United States District Judge Michael Schneider upheld Plaintiff's objection that his somatoform disorder was not properly considered in the ALJ's evaluation and remanded the case back to the Administration under sentence four of 42 U.S.C. § 405(g) (TR 818).

The Appeals Council remanded Plaintiff's case back to the ALJ for a new hearing and decision pursuant to the District Court's remand order  (TR 822).   On October 18, 2010, the ALJ held another administrative hearing in Fort Worth, Texas (TR 1065).   On November 19, 2010, the ALJ issued another unfavorable decision (TR 802).   On February 10, 2010, Plaintiff, through counsel, submitted to the Appeals Council a statement of exceptions to the ALJ's decision (TR 779). On May 4, 2011, the Appeals Council declined to assume jurisdiction over the case, making the ALJ's decision the final decision of the Commissioner (TR 776).   Having exhausted his administrative remedies, Plaintiff then filed the above-captioned civil action under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation.  The ALJ made the following findings:

1.   Mr. Williams met the disability insured status requirements of the Act as of his alleged onset of disability date of June 15, 2001, and he continued to meet them through December 31, 2006. *See* 20 C.F.R. §§ 404.101, *et seq*. (Exhibit 2D, pages 1-2).

2.   Mr. Williams did not engage in substantial gainful activity at any time relevant to this decision. *See* 20 C.F.R. §§ 404.1510 and 404.1572. (*See* Exhibit 3D, pages 3-7; Exhibit 8E, page 5; the claimant's testimony).

3.   The medical evidence establishes that as of and prior to December 31, 2006, Mr. Williams had dysthymic disorder, cognitive disorder NOS, major

depressive disorder, social anxiety disorder, generalized anxiety disorder, hypertension, obesity, non-insulin-dependent diabetes mellitus, anemia, and degenerative changes in his lumbosacral spine. He had a "severe" combination of impairments, but he did not have any impairment or combination of impairments listed in, or that equaled in severity an impairment listed in, 20 C.F.R. § 404, Subpart P, Appendix 1. *See Bowen v. Yuckert*, 482 U.S. 137 (1987), *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), 20 C.F.R. § 404.1521, and Social Security Ruling 96-3p.

4.   Mr. Williams had objectively identifiable, medically determinable impairments as of and prior to December 31, 2006, that reasonably could have been expected to produce some of the pain and other symptoms he alleged.

5.   Based on the evidence in its entirety, Mr. Williams' allegations concerning his level of pain, subjective complaints, and functional limitations as of and prior to December 31, 2006, were not credible or reasonably supported by the findings of the objective medical evidence or the inferences therefrom. *See* 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p.

6.   As of and prior to December 31, 2006, Mr. Williams had the residual function capacity to obtain, perform, and maintain the following: lift and carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, and walk (individually or in combination) throughout an eight-hour workday; and otherwise perform the full range of medium work. He had to avoid jobs that required extended concentration and therefore he had to perform jobs with a reasoning development level of one, two, or three (as defined in the *Dictionary of Occupational Titles*). *See* 20 C.F.R. § 404.1545, *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), and *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).

7.   As of and prior to December 31, 2006, Mr. Williams was unable to perform his past relevant work, as that work required the performance of work-related activities precluded by the foregoing limitations.

8.   Mr. Williams was 50 years old, which is defined as a "person closely approaching advanced age," as of his alleged onset of disability date of June 15, 2001. He was 55 years old, which is defined as a "person of advanced age," as of his date last insured on December 31, 2006. *See* 20 C.F.R. § 404.1563. (*See* Exhibit 1D, page 1; claimant's testimony).

9.   Mr. Williams has a high school education and two years of college but no college degree.  (Claimant's testimony).

10.   Mr. Williams' past relevant work as a training manager is skilled work, as it

has a specific vocational preparation ("SVP") of seven.  *See* 20 C.F.R. § 404.1568.  (Vocational expert's testimony, August 2007 hearing).

11.     Given Mr. Williams's age and residual functional capacity for the period at issue in this case, the issue as to the acquisition or transferability of work skills were immaterial.  *See* 20 C.F.R. § 404.1568.

12.     If Mr. Williams retained the residual functional capacity to perform the full range of medium work as of and prior to December 31, 2006, and given his age, education, and past work performance, 20 C.F.R. § 404.1569 and Rules 203.15 and 203.22, Table No. 3, of 20 C.F.R. Part 404, Subpart P, Appendix 2, would direct a conclusion the claimant was not disabled through that date.

13.     Although Mr. Williams' additional nonexertional limitations did not allow the claimant to perform the full range of medium work through December 31, 2006, the above-cited Rules can be used as a framework for decision-making in finding there were a significant number of jobs in the national and regional economies that the claimant could have performed.  Examples of such jobs, with the rate of occurrence for each, are: 1) merchandise deliverer, with 200,000 such jobs in existence in the national economy and 16,000 such jobs in existence in the Texas economy; 2) kitchen helper, with 220,000 such jobs in existence in the national economy and 20,000 such jobs in existence in the Texas economy; and 3) hospital cleaner, with 100,000 such jobs in existence in the national economy and 8,000 such jobs in existence in the Texas economy.  (Vocational expert's testimony, August 2007 hearing).

14.     Mr. Williams was not under a "disability," as defined in the Social Security Act, at any relevant time through December 31, 2006, the date on which he was last insured for Title II Disability Insurance Benefits.

(Tr. 790-802).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision of no disability is limited to two inquiries: whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were used in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion. *Id.* at 401. The Court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court is not to substitute its judgment for that of the Commissioner, and reversal is permitted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below.

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2012). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (2012). 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to

a listed impairment is not considered to be disabled if he is capable of performing his past work.  20

C.F.R. § 404.1520(e).

At the fifth step, it must be determined whether claimant could perform some work in the

national economy.  A claimant who cannot return to his past work is not disabled if he has the

residual functional capacity to engage in work available in the national economy.  20 C.F.R. §

404.1529(f); 42 U.S.C. § 1382(a).

At this juncture, the burden shifts to the Commissioner to show that there are jobs existing

in the national economy which Plaintiff can perform, consistent with his medically determinable

impairments, functional limitations, age, education, and work experience. *See Bowen v. Yuckert*, 482

U.S. 137 (1987).  Once the Commissioner finds that jobs in the national economy are available to

the claimant, the burden of proof shifts back to the claimant to rebut this finding.  *See Selders v.*

*Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

## BACKGROUND EVIDENCE

Plaintiff was diagnosed with diabetes shortly before a November 2000 visit with Dr. Jackie

Norris (TR 254).  He was also diagnosed with high cholesterol and GERD.  Records from 2002 show

a continued diagnosis of diabetes as well as left lower abdominal pain (TR 252).

Records from January of 2003 note that Plaintiff suffered from lower back pain and that his

back tightened after he walked.  On exam, he had tenderness in his lower lumbar spine with

associated paraspinal muscle tenderness.  He was prescribed Celebrex (TR 251).  In April of 2003,

Dr. Norris diagnosed right upper extremity paresthesias involving the right thumb and index finger

(TR 248). The doctor also diagnosed pain in Plaintiff's low back which radiated to his right lower

extremity.  Dr. Norris ordered an x-ray and MRI which showed degenerative changes and bulging

discs in the lumbar spine (TR 245-47, 250).  His pain continued and was worse with bending and

6

prolonged walking (TR 243).

In February of 2004, records note that Plaintiff had right shoulder tenderness, a nodular lesion at the base of his right thumb, and lower back pain associated with muscle spasm which was exacerbated by long standing or walking (TR 135).  Dr. Norris diagnosed right shoulder bursitis, right thumb nodule, lower back pain with spasm, elevated blood pressure, and diabetes.

Records from July of 2004 state that Plaintiff continued to suffer from radiating pain down his left leg and that he also experienced toe numbness made worse after walking (TR 133).  Dr. Norris examined Plaintiff in August of 2004 and found tenderness over the posterior cervical spine (TR 132).

Plaintiff was referred to the doctors at Premier Pain Care in August of 2004 (TR 128- 130). Plaintiff was diagnosed with lumbar discogenic pain, radiculopathy, and facet syndrome (TR 130). Plaintiff described a long history of lower back pain radiating down the front of his left leg, accompanied by an intolerance for sitting and standing  (TR 128).  On exam, he displayed persistent pain in the low back and lower lumbosacral facets upon back extension and side bending (TR 129). Plaintiff was assessed with discogenic pain, radiculopathy, and facet syndrome specific to his lumbar spine (TR 129).

In November of 2004, Dr. Jyoti Patel evaluated Plaintiff at the request of Disability Determination Services (TR 148-150).  On exam, he had a depressed and anxious mood with a constricted range and intensity of affect (TR 149).  He only remembered one out of four objects after five minutes, despite strong attempts to remember (TR 149). He could not repeat five digits forwards and backwards (TR149).  Dr. Patel diagnosed him with depression secondary to a diagnosis of chronic pain syndrome, chronic lower back pain, diabetes status post diabetic nephropathy, impaired vision, and memory problems (TR 150).  Dr. Patel assessed a Global Assessment of Functioning

7

("GAF") score of 40-50 and a guarded prognosis (TR 150).

Records from March of 2005 note that Plaintiff continued to have chronic lower back pain with some pain radiating to his legs (TR 241).  On exam, he had lumbosacral spinal tenderness, paraspinal muscle tenderness, and pain with back flexion (TR 241).  At an August 2006 exam, Plaintiff reported increased memory loss and a slowed ability to do computations (TR 236).  He was diagnosed with worsening memory loss, history of depression, diabetes, and chronic lower back pain (TR 236).  Due to these conditions, he was referred to Dr. Weibe for neuropsychological evaluation and testing (TR 236).

Dr. Weibe noted memory loss since 2000, which had in recent years become worse (TR 263). Plaintiff also had chronic back pain and significant depression (TR 263).  Plaintiff reported disorientation with driving, that he must read material several times to retain it, that he forgets names, and that he misplaces things (TR 263). He required assistance to remember if he took his medications (TR 263). His wife and son addressed most household duties, and his wife handled the finances (TR 263).

Psychological and intelligence testing showed that Plaintiff was in the eighteenth percentile for working memory and in the eighth percentile in processing speed (TR 265).  Test weaknesses included auditory attention and concentration, general fund of information, and complex working memory (TR 265).  Dr. Weibe diagnosed him with dysthymic disorder and a moderate to severe cognitive disorder (TR 265). The doctor also assessed chronic back pain and diabetes and assigned a GAF score of 55. She noted that Plaintiff's slowed processing, poor attention and concentration, loss of mental set, and impaired memory may be secondary to or exacerbated by depression (TR 269).

Plaintiff sought treatment from Dr. Neena Patel in July of 2006 (TR 212-214).  At his first

consultation, he reported decreased concentration, a quick temper, social anxiety, and back problems. (TR 212).  Upon exam, he was depressed (TR 213).  Dr. Patel's diagnoses were major depressive disorder, generalized anxiety disorder, social anxiety disorder, possible diabetes- induced mood disorder, and possible cognitive disorder. Plaintiff's GAF was 55 (TR 214). In August of 2006 Plaintiff was anxious on exam and continued having decreased concentration and energy (TR 202). Plaintiff only interacted with his wife and children (TR 200).  He also had an anxious, irritable mood, varying appetite, and decreased energy and concentration (TR 199). By November of 2006, Plaintiff reported being tearful all the time (TR 197).

## ANALYSIS

Plaintiff raises the following two issues on appeal: (1) whether the ALJ failed to recognize and consider Plaintiff's somatization as a medically determinable impairment and consider the effects of somatization when making the residual functional capacity assessment; and (2) whether the ALJ erred in assessing the severity of Plaintiff's chronic pain syndrome when evaluating the combination of impairments.  Plaintiff's insured status expired on December 31, 2006 (TR 790).

Plaintiff first asserts that the ALJ failed to recognize and consider Plaintiff's somatization as a medically determinable impairment.

Plaintiff's insured status expired on December 31, 2006 (TR 790). Plaintiff is eligible for disability benefits only if the onset of a qualifying medical impairment began on or before the date he was last insured. Plaintiff bears the burden of establishing a disabling condition before the expiration of his insured status. *Ivy v. Sullivan*, 898 F.2d 1045 (5th Cir. 1990).

The Regulations define a somatoform disorder as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms."  20 C.F.R. § 404, Subpt. P, App. 1 § 12.07 (2012).  The listing criteria for somatoform disorder include an "unrealistic

interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury." *Id*. In addition to these sensations being documented with medical evidence, Plaintiff must prove two of the following: "marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." *Id*.

The Fifth Circuit has held that "[w]hen medical findings do not substantiate the existence of physical impairments capable of producing alleged pain and other symptoms, the ALJ must investigate the possibility that a mental impairment is the basis of the symptoms." *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994) (citing 20 C.F.R. 404.1429(b)). Further, what is important in the finding of a somatoform disorder is when the record shows "the linking of a physical impairment, or the degree of a physical impairment, to a psychological cause." *Scott v. Shalala*, 43 F.3d 669, 1994 WL 725034, at *4 (5th Cir. 1994). Isolated, untreated complaints of mental distress do not sufficiently prove psychological causes of physical limitations, but mental health treatment and diagnoses of somatization are sufficient. *See Leggett v. Charter*, 67 F.3d 558, 566 (5th Cir. 1998); *Latham*, 36 F.3d at 484. Finally, when somatoform disorder is indicated by the record, an ALJ must consider the extent to which Plaintiff's mental impairments account for his subjective complaints. *Bragg v. Comm'r of Soc. Sec.*, 567 F. Supp. 2d 893, 913-914 (N.D. Tex. 2008); *See* SSR 96-9p, 1996 WL 374184, at *6. . The defining characteristic of somatization disorders is the manifestation of physical symptoms without determinable physiologic causes. *See Scott*, 43 F.3d 669, 1994 WL 725034, at *4.

In the present case, the Court reversed the ALJ's 2007 decision because the ALJ failed to discuss why Plaintiff's somatization was not a severe impairment and what impact somatization had

on Plaintiff's residual functional capacity (TR 818).  In the ALJ's 2010 decision, which is the subject of review in this case, the ALJ acknowledges notations in the record of somatization, but dismisses it because it is not medically determinable (TR 792).  The ALJ also discusses Plaintiff's somatization when making his credibility analysis (TR 792, 798).

Step two of the five-step sequential evaluation process for determining whether an individual is disabled involves determining whether that individual has a medically determinable impairment that is "severe." 20 C.F.R. § 404.1520(c).  The Commissioner defines a "medically determinable" impairment as:

> an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of symptoms, signs, and laboratory findings – not only by the individual's statement of symptoms.

Social Security Administration Handbook, § 601.  Medically determinable impairments are also considered by the ALJ when making the residual functional capacity finding. The ALJ must consider all medically determinable impairments of which he is aware, including those that are not "severe," when making the residual functional capacity finding. 20 C.F.R. §§ 404.1545(a)(2), 404.1520(c), 404.1521, and 404.1523.

The ALJ stated and found:

> This case was remanded by the District Court because I did not discuss at step two why the claimant's somatization was not "severe" impairment.  In its Order of July 26, 2010, the Appeals Council directed me to further consider the claimant's somatic complaints.  These are not the same issues.  The District Court Order implies the claimant has a medically determinable somatization disorder, which would then require me to consider if it is "severe."  The Appeal Council Order directs further consideration of the claimant's subjective complaints.  I re-read the medical evidence in this case carefully, again, after the case was remanded by the District Court.  The claimant has never been diagnosed with a somatization disorder.  Despite the representative's argument to the District Court, the representative admitted at the October 2010 hearing that the medical records did not contain a diagnosis of

11

somatization disorder. Therefore, somatization disorder is not a medically determinable impairment in this case, and definitely was not prior to December 31, 2006. Thus, there is no issue as to whether it was "severe." Nonetheless, I considered the claimant's somatic complaints in reaching my determination, as more fully discussed below.

(TR 792).

Plaintiff asserts that the Commissioner's own definitions allow medically determinable impairment to be shown through "symptoms, signs, and laboratory findings" and do not, despite the ALJ's unsupported statement to the contrary, require a definitive diagnosis. Plaintiff cites the Court to *Schriner v. Comm'r, Soc. Sec. Admin.*, No. 3:08-CV-2042-N, 2010 WL 2941120, at *13 (N.D. Tex. June 22, 2010), for the principle that "[n]either the Social Security Act nor the regulations require that the Plaintiff's 'medically determinable impairments' be either formally diagnosed or that such diagnosis be 'confirmed.'" *Id.*

The issue is whether at step two, the ALJ erred. The ALJ, citing to *Stone v Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), evaluated all of Plaintiff's alleged impairments, including the somatization disorder, and determined that Plaintiff's dysthymic disorder, cognitive disorder NOS, major depressive disorder, social anxiety disorder, generalized anxiety disorder, hypertension, obesity, non-insulin-dependent diabetes mellitus, anemia, and degenerative changes in his lumbosacral spine were the only severe impairments (TR 791).

The Commissioner asserts that during the relevant period at issue, the medical records revealed no evidence that Plaintiff had any other impairment which constituted a severe impairment within the constraints of *Stone*, including Plaintiff's somatization disorder. Plaintiff points to Plaintiff's somatization being noted several times in the record. In 2005, MMPI-2 testing noted that Plaintiff's decline in psychological adjustment was marked with a "myriad of physical problems that are in all likelihood heavily associated with emotional conflict" (TR 173). It further noted that

12

somatization was a prominent personality adjustment and coping style, with physical exacerbations being likely in stressful situations (TR 173). Dr. Pitts also noted that she had little insight into the psychological contribution to his physical symptoms (TR 173). In addition, Dr. Wiebe's MMPI-2 testing noted somatic problems.

The Commissioner argues correctly that the mere diagnosis of an impairment or the mention of a condition in the medical records does not establish a disabling impairment or even a significant impact on that person's functional capacity. *See Hames*, 707 F.2d at 166. The case was remanded in order for the ALJ to consider whether Plaintiff had a severe impairment as it relates to his somatization disorder. After remand, the ALJ did consider this issue and applied the correct standard of review. Although the ALJ did not classify the somatization disorder as severe, the ALJ did consider the effects of all of Plaintiff's impairments (TR 789-802). The ALJ fully considered the combined effect of all of Plaintiff's impairments and properly determined that there was no evidence of exertional limitations that would interfere with Plaintiff's ability to perform medium work. Substantial evidence supports this decision.

Plaintiff next asserts that the ALJ did not consider the effects of somatization when making the residual function capacity finding. Plaintiff asserts that the ALJ failed to consider his somatization with the combined effect of all other impairments regardless whether it is severe or non-severe. Plaintiff argues that although his back impairment alone may not objectively establish being able to lift less than five pounds, that impairment plus somatization may help to explain the exertional limitations Plaintiff experiences. Plaintiff also asserts that when you combine the other physical impairments, the ALJ's findings regarding his residual functional capacity seems contrary to the evidence.

At the time of the administrative hearing, the decision regarding what a claimant's residual

13

functional capacity is rests with the ALJ. 20 C.F.R. § 404.1546; *Ripley v. Charter*, 67 F.3d 552, 557 (5th Cir. 1995). The burden to prove disability by demonstrating a physical or mental impairment lies with the claimant. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987); 20 C.F.R. § 404.1512(a). Social Security Regulations do not require an ALJ to make any particular residual functional capacity finding if the evidence does not support that conclusion. 20 C.F.R. § 404.1545(a)(3). Only in rare circumstances, where the claimant establishes intermittently recurring symptoms that are of sufficient frequency or severity to prevent him or her from holding a job for a significant period of time, is an ALJ required to make a separate determination regarding whether a claimant is able to maintain employment. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).

The Commissioner asserts that Plaintiff's argument that his other physical impairments such as diabetes, hypertension, and obesity along with his somatization disorder are contrary to the ALJ's residual functional capacity finding is without merit. Plaintiff testified that he was not taking insulin for his diabetes (TR 764). The ALJ noted in his decision that despite Plaintiff's argument that he has a severe somatization disorder, he has not been diagnosed with this disorder by any of his treating sources (TR 792). The Court agrees that it was merely mentioned during some of his medical examinations (TR 173, 268). Plaintiff has not pointed to any limitations that would preclude him from performing medium work. The ALJ considered the combined effect of all of Plaintiff's impairments (TR 789-802) and properly found that Plaintiff could perform medium work (TR 799-800). After remand, the ALJ conducted a detailed analysis and the Court finds that substantial evidence support this decision.

Plaintiff cites the Court to *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994) for the proposition that the ALJ is required to investigate the possibility that a claimant's pain and symptoms existed as a result of the somatization disorder as compared to physical impairments. The

14

Commissioner distinguishes *Latham,* asserting that in *Latham* there was actually a diagnosis of a somatization disorder, whereas in this case there has not been a diagnosis of a somatization disorder (TR 792). The Court agrees. There is no evidence that supports the notion that Plaintiff actually has a somatization disorder. Plaintiff was given the benefit of remand so that the issue of somatization could be considered. The ALJ did consider it and properly concluded that there was no basis for Plaintiff's contention that he suffers from a somatization disorder. The ALJ did consider the fact that a mental impairment might be the basis of Plaintiff's symptoms because the ALJ found that Plaintiff had the following mental impairments that were severe: dysthymic disorder, cognitive disorder NOS, major depressive disorder, social anxiety disorder, and generalized anxiety disorder (TR 791). The Court agrees that the evidence does not support Plaintiff's allegations that his mental impairments were the cause of increased pain. The objective evidence does not show that Plaintiff had disabling pain.

Pain constitutes a disabling condition under the Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 166). There must be clinical or laboratory diagnostic techniques which show the existence of a medical impairment which could reasonably be expected to produce the pain alleged. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citation omitted); 20 C.F.R. 404.1529 and 416.929.

The ALJ must consider subjective evidence of pain and make findings regarding claimant's claims, but it is within the judge's discretion to determine the pain's disabling nature. *Scharlow v. Schweiker*, 655 F.2d 645, 648-649 (5th Cir. 1981); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citations omitted). The mere existence of pain does not automatically create grounds for disability. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989) (citations omitted). Subjective

15

evidence need not be credited over conflicting medical evidence. *Jones v. Heckler*, 702 F.2d 616, 621, n.4 (5th Cir. 1983).  The ALJ must articulate specific reasons for rejecting a claimant's subjective complaints when a determination is made that the complaints are not credible. *Falco v. Shalala*, 27 F.3d 160, 163-164 (5th Cir. 1994).  The ALJ's very detailed opinion indicates that in reaching his decision the ALJ considered all of the evidence and determined that Plaintiff was not credible to extent alleged. Substantial evidence support the ALJ's decision.

Plaintiff also argues that the ALJ relied upon his somatization as a reason not to believe his allegations of pain and limitations beyond what the physical evidence showed.  The ALJ found that Plaintiff's credibility was eroded not only by the lack of objective evidence to support many of his subjective complaints, but also by the possibility that secondary gain was a strong possibility, by this tendency for somatization, by his tremendous exaggeration, and by his own admissions of his capabilities and activities (TR 798).  The ALJ properly considered Plaintiff's alleged somatization disorder in his credibility analysis and properly found that Plaintiff was not credible.

Plaintiff's last issue on appeal is that the ALJ erred in assessing the severity of Plaintiff's chronic pain syndrome when evaluating the combination of impairments.  Plaintiff argues that the ALJ impliedly found that his chronic pain was not a severe impairment.  Plaintiff contends that because his chronic pain was not considered as a medically determinable severe impairment, it was not considered in combination with his other impairments throughout the disability evaluation process.  Plaintiff argues that his chronic pain was a medically determinable impairment.

The arguments of Plaintiff are misplaced.  There is no question that the ALJ considered Plaintiff's pain in reaching a decision in this case.  If the ALJ's failure to include his pain as a separate impairment is an error, the Court agrees with the Commission that the error would be harmless.  The ALJ fully considered the combined effect of all of Plaintiff's impairments and

properly determined that there was no evidence of exertional limitations that would interfere with Plaintiff's ability to perform medium work (TR 799-800). Substantial evidence supports the ALJ's decision.

This is a case where Plaintiff has received a thorough review which included a remand for an additional ALJ hearing. A review of the current ALJ decision demonstrates that the ALJ considered all of the evidence and determined that Plaintiff was not disabled prior to the expiration of his insured status, December 31, 2006. This Court will not re-weigh the evidence, try the question de novo, or substitute its own judgment for the Commissioner's, even if this Court believes the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). There is record evidence to support the ALJ's decision, and the Court finds that evidence is substantial.

It is therefore ORDERED that the decision of the Administrative Law Judge is **AFFIRMED. SIGNED this 27th day of March, 2013.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

17